FILED

2013 May-21  PM 02:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES COURT FOR
THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BRITTNE A. BELL, as Personal Representative of the Estate of Rebecca Lynn Allred, | ) ) ) ) | |
| Plaintiff, | ) ) | 2:12-CV-2991-LSC |
| vs. | ) ) | |
| SHELBY COUNTY, ALABAMA et al., | ) ) ) | |
| Defendants. | ) ) ) | |

MEMORANDUM OPINION

I.    Introduction

In this case, Brittne A. Bell ("Plaintiff") alleges that the various defendants violated her decedent's constitutionally protected rights and caused her to suffer injury under Alabama law when they incarcerated her without a hearing to determine indigency, and then failed to provide her with water and adequate medical care. Defendants have moved to have each of her claims dismissed.

II.    Background

Rebecca Lynn Allred was arrested on May 13, 2011, by law enforcement officers in Harpersville, Alabama, for an unpaid fine issued for an expired license tag. (Doc. 4,

¶ 11.) Ms. Allred was transported to and booked into the Shelby County Jail. During her incarceration, she visited the jail nurse multiple times but was refused treatment every time. (*Id.*, ¶ 16.) Fellow inmates at the Shelby County Jail observed " a yellow tinge to [Ms. Allred's] skin and the whites of her eyes" (Doc. 29-1, ¶ 9), and contacted Dustin Allred, Ms. Allred's son, by telephone to inform him of Ms. Allred's worsening health. (Doc. 4, ¶ 17.) Mr. Allred visited her on May 15, 2011, and observed her in ill health. (*Id.*, ¶ 15.) He contacted the jail medical staff several times on May 16, 2011, attempting to ascertain information and encourage treatment of Ms. Allred. (*Id.*) Finally, he got in contact with the jail, but the medical staffer was dismissive of Mr. Allred's pleas for better treatment, telling him that Ms. Allred was a " regular visitor" at the jail. (*Id.*, ¶ 18.)

Ms. Allred was found unresponsive in her cell on the afternoon of May 17, 2011, and was transported to the Shelby Baptist Medical Center Emergency Room. (*Id.* at ¶ 19.) She was diagnosed with " heptic encephalopathy . . . a brain disorder caused by liver damage" which can be brought on by dehydration. (Doc. 29-1, ¶ 10.) She passed away on May 18, 2011. (Doc. 4, ¶ 20.)

The autopsy of Ms. Allred diagnosed her with " acute bronchopneumonia," which includes symptoms of " fatigue, cough, vomiting, loss of appetite and fever." (Doc. 29-1, ¶ 7.) It is alleged that the fatigue and other symptoms of acute

bronchopneumonia prevented Ms. Allred from leaving her bed to obtain water, thus causing dehydration. (*Id.*, ¶ 8.) Additionally, the autopsy revealed "acute massive hepatocellular necrosis," otherwise known as liver failure. (*Id.*, ¶ 7.)

Plaintiff alleges the existence of a policy at the Shelby County Jail that "prohibit[s] inmates from possessing drinking vessels, unless the inmate purchased said cup or drinking vessel from the prison commissary." (*Id.*, ¶ 4.) Ms. Allred's indigent status did not allow her to buy a cup from the jail commissary, requiring her to leave her bed to obtain drinking water. (*Id.*, ¶ 6.) Plaintiff also contends that problems with the jail's plumbing system caused the tap water to be too hot to drink or touch at times and caused the drinking fountains to be inoperable without the aid of a cup or vessel. (*Id.*, ¶ 5.) Plaintiff alleges that the refusal of medical treatment, the restricted access to drinking vessels, and the conditions limiting access to drinking water at the jail caused or contributed to the death of Ms. Allred.

Plaintiff filed her complaint on September 17, 2012 (Doc. 1), and amended it on September 21, 2012, alleging the following claims: (1) deliberate indifference to the decedent's serious medical needs in violation of the Due Process Clause of the Fourteenth Amendment, (2) a deprivation of the decedent's due process rights in violation of 42 U.S.C. § 1983, through automatic incarceration without a hearing to determine indigency, (3) a deprivation of the decedent's right to equal protection in

violation of 42 U.S.C. § 1983, through the automatic incarceration without a hearing to determine indigency, (4) wrongful death, and (5) negligent hiring, training, supervision, and retention. (Doc. 4.)

Sheriff Curry and Shelby Count each filed Motions to Dismiss (Docs. 12–15), Prison Healthcare, LLC ("Prison Healthcare") filed a combined Motion to Dismiss and Motion for More Definite Statement (Doc. 17), Judicial Corrections Services ("JCS") filed a Motion for Summary Judgment (Doc. 23, 24), and the Town of Harpersville ("Harpersville") and Theoangelo Perkins filed a Motion to Dismiss. (Doc. 25.) Thereafter, Plaintiff filed a Motion for Leave to Amend and attached thereto her proposed Amended Complaint. (Doc. 29.) The motions are ripe for consideration.

III.   Standard

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)). Further, all "reasonable inferences" are drawn in favor of the

plaintiff. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).[1] The plaintiff must plead "enough facts to state a claim that is plausible on its face." *Id.* at 570. Unless a plaintiff has "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.*

"[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)). And, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has

---

[1]In *Bell Atlantic Corp. v. Twombly*, the U.S. Supreme Court abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" set forth in *Conley v. Gibson*, 355 U.S. 41 (1957). *Bell Atl. Corp.*, 550 U.S. at 560-63. The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563.

not 'show[n]'—'that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Therefore, the Supreme Court suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1950).

Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1951-52). However, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on any possible theory." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997).

IV.     Discussion

A.     Plaintiff's Motion for leave to Amend

Upon due consideration, Plaintiff's Motion for Leave to Amend is due to be granted; thus, in deciding the various motions to dismiss and for summary judgment,

the Court considers the facts and claims as alleged in the proposed complaint attached to Plaintiff's motion. (*See* Doc. 29-1.) The proposed complaint (hereinafter the "Second Amended Complaint"), adopts and realleges the factual allegations as set forth in Plaintiff's Amended Complaint (Doc. 4) (hereinafter the "First Amended Complaint"), only adding a few factual details while clarifying and restating Count I of the First Amended Complaint. (Doc. 29-1. ¶ 2.) As the factual allegations and claims of the Second Amended Complaint are substantially similar to those of the First Amended Complaint, the Court will consider the motions and arguments made by the various defendants against the First Amended Complaint as being applicable to the new complaint. To the extent that the arguments would be different, particularly for Count I, the motions will be denied with leave to refile.

B.    Harpersville and Theoangelo Perkins' Motion to Dismiss

In Harpersville and Theoangelo Perkins' Motion to Dismiss, Theoangelo Perkins requests that all counts against him be dismissed. The Second Amended Complaint makes it clear that Theoangelo Perkins is being sued only in his official capacity as the mayor of Harpersville. (Doc. 29, Ex. 1, ¶ 5.) Harpersville is also named as a defendant in this case. "Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985) (internal quotations omitted). The Eleventh

Circuit has approved of dismissing the officials in such cases:

> Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, . . . . To keep both the City and the officers sued in their official capacity as defendants in this case would have been redundant and possibly confusing to the jury.

*Busby v. City of Orlando*, 931 F. 2d 764, 776 (11th Cir. 1991). For this reason, all counts against Perkins are due to be dismissed.

Harpersville likewise requests that all counts against it be dismissed. In the Second Amended Complaint, Plaintiff adopts Counts II and III as alleged in the First Amended Complaint. These are the only counts alleged against Harpersville. Counts II and III allege that Harpersville deprived Ms. Allred of her due process and equal protection rights in violation of 42 U.S.C. § 1983, through automatic incarceration without a hearing to determine indigency, proximately resulting in "injuries" and "damages," respectively. (Doc. 4, ¶¶ 33, 36.) Harpersville makes two arguments in its motion to dismiss. First, it argues that Counts II and III are abated under Alabama's survivorship statute. Second, it argues that Plaintiff failed to allege a cognizable § 1983 claim against it.

"No language in 42 U.S.C. § 1983 provides for the survival of a civil rights action in favor of another upon the death of the injured party. Because the statute is

silent or 'deficient' in this respect, 42 U.S.C. § 1988(a) requires application of state survivorship law, provided that law is 'not inconsistent with the Constitution and laws of the United States.'" *Estate of Gilliam ex rel. Waldroup v. City of Prattville*, 639 F.3d 1041, 1043 (11th Cir. 2011) (quoting 42 U.S.C. § 1988(a)). Under Alabama's survivorship law, any action for personal injury that has not been filed before the injured party dies does not survive in favor of the personal representative. Ala. Code § 6-5-462. *See Bates v. L&N Emp. Credit Union*, 374 So. 2d 323, 324 (Ala. 1979). Alabama's survivorship law is not inconsistent with the Constitution and laws of the United States, even when the decedent would not otherwise have had sufficient time to file such a claim before her death. *Estate of Gilliam*, 639 F.3d at 1047. However, "when a constitutional violation actually causes the injured party's death, a § 1983 claim can be asserted through the Alabama wrongful death statute." *Id. See also City of Tarrant, Ala. v. Jefferson,* 682 So. 2d 29, 29-31 (Ala. 1996); *Brown v. Morgan County, Ala.*, 518 F. Supp. 661, 665 (N.D. Ala. 1981).

In this case, Counts II and III plead "injuries" and "damages," respectively. Due to this Court's order continuing the briefing deadlines (Doc. 33), Plaintiff has not had an opportunity to inform the Court if she contends that Harpersville's actions caused Ms. Allred's death, or if she alleges a cognizable § 1983 claim against the town. Accordingly, the Court will defer its ruling on Harpersville's request to dismiss, and

Plaintiff will be directed to provide a responsive submission.

D.    JCS's Motion for Summary Judgment

The only counts alleged against JCS are Counts II and III, which allege that JCS deprived Ms. Allred of her due process and equal protection rights in violation of 42 U.S.C. § 1983, through automatic incarceration without a hearing to determine indigency, proximately resulting in "injuries" and "damages," respectively. (Doc. 4, ¶¶ 33, 36.)

JCS makes two arguments in support of its motion for summary judgment. First, it argues that Plaintiff's claims are abated under Alabama's survivorship statute. (Doc. 24 at 7–9.) Second, JCS argues that Plaintiff has no evidence suggesting that it played any part in Ms. Allred's arrest, incarceration, or death (Doc. 24 at 6), and offers an affidavit as evidence. Due to this Court's order continuing briefing deadlines (Doc. 33), Plaintiff has not had an opportunity to respond to these arguments. Accordingly, the Court will defer its ruling on JCS's Motion for Summary Judgment, and Plaintiff will be directed to provide a responsive submission.

E.    Prison Healthcare's Motion to Dismiss or Motion for More Definite Statement

Plaintiff includes Prison Healthcare in Counts I and IV of the Second Amended Complaint. Prison Healthcare's Motion for More Definite Statement is specific to

Count I of the First Amended Complaint, and asks whether this count was alleged against it. The Second Amended Complaint clarifies this issue, properly naming Prison Healthcare in Count I; therefore, the Motion for More Definite Statement is moot.

Prison Healthcare's Motion to Dismiss for failure to state a claim is specific to Count IV. Count IV alleges a claim of wrongful death under Alabama law. Plaintiff claims that an agent of Prison Healthcare refused to diagnose or treat the decedent, resulting in her death. Because Prison Healthcare is a healthcare provider, it asserts that Ala. Code § 6-5-551 requires a higher standard of pleading:

> In any action for injury, damages, or wrongful death, whether in contract or in tort, against a healthcare provider for breach of the standard of care . . . the plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by the Plaintiff to render the healthcare provider liable to the Plaintiff.

Ala. Code § 6-5-551. Prison Healthcare argues that the complaint does not allege sufficient details or facts to meet this standard, specifically citing the lack of notice " as to what alleged negligent acts it committed, [or] . . . the time and place that the alleged negligent acts occurred." (Doc. 28 at 2.) The Alabama Supreme Court has interpreted the heightened pleading requirements of § 6-5-551 as similar to the requirement to plead fraud with specificity under Rule 9(b) of the Alabama Rules of Civil Procedure. *Mikkelsen v. Salama*, 619 So. 2d 1382, 1384 (Ala. 1993). Applying this body of case law, the court determined that " although every element of the cause of action need not be

stated with particularity, the plaintiff must give the defendant health care provider fair notice of the allegedly negligent act and must identify the time and place it occurred and the resulting harm." *Id.*

Plaintiff's complaint gives Prison Healthcare fair notice of the alleged negligent act complained of by stating that " [a]gents of [Prison Healthcare] refused to see [Ms.] Allred, or to provide her with a diagnosis or treatment," and " [a]s a proximate result of the conduct of [Prison Healthcare], [Ms. Allred] was denied medical care for a serious condition, proximately resulting in her death." (Doc. 4, ¶¶ 39–40.) While Plaintiff's complaint does not pinpoint an exact time, it does allege Prison Healthcare committed negligent acts " [d]uring the period of Ms. Allred's incarceration." (Doc. 4, ¶ 16.) Since the complaint alleges Ms. Allred was incarcerated from May 13, 2011, until her transportation to the hospital emergency room on May, 18, 2011, Plaintiff has provided a specific period in which the alleged negligent acts occurred. Alabama courts have accepted less definite time periods as sufficient. *See Mikkelsen*, 619 So. 2d at 1384 (complaint alleging date and time as " prior to the automobile accident" and " during the several weeks preceding the said accident" found to be sufficient). Additionally, the complaint makes it clear that Ms. Allred was incarcerated at the Shelby County Jail when the alleged negligent acts occurred, thus identifying the " place it occurred" as required by § 6-5-551. (*See* Doc. 4, ¶¶ 12-13.) For these reasons, Prison Healthcare's

motion to dismiss will be denied.

F.   Shelby County's Motion to Dismiss

1.   Count I

Count I alleges deliberate indifference to the decedent's serious medical needs in violation of the Due Process Clause of the Fourteenth Amendment, and seeks a remedy pursuant to 42 U.S.C. §§ 1983 and 1988. Shelby County argues that—even if the jailers were deliberately indifferent to Ms. Allred's serious medical needs—it cannot be held liable under a respondeat superior theory in a § 1983 action.

The Second Amended Complaint alleges that Shelby County had a duty to provide adequate funding to the jail for the necessary medical attention for inmates. This duty arises under Ala. Code § 14-6-9 and provides that " necessary medicines and medical attention [must be furnished by the sheriff or jailer, at the expense of the county,] to those who are sick or injured, when they are unable to provide them for themselves." *Id. See Shaw v. Coosa County Com'n*, 330 F.Supp.2d 1285, 1289 (M.D. Ala. 2004). The Eleventh Circuit has noted:

> The federal courts have consistently ruled that governments, state and local, have an obligation to provide medical care to incarcerated individuals. This duty is not absolved by contracting with an entity such as [an independent contractor]. Although [an independent contractor] has contracted to perform an obligation owed by the county, the county itself remains liable for any constitutional deprivations caused by the policies or customs of the [independent contractor]. In that sense, the

> county's duty is non-delegable. Lack of funds for facilities cannot justify
> an unconstitutional lack of competent medical care and treatment for
> inmates.

*Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 705 (11th Cir. 1985) (internal citations omitted).

Plaintiff alleges that Shelby County failed "to provide adequate funding for medical care within the jail, and [failed] to provide adequate funding to keep the physical plant operating properly, specifically the plumbing system." (Doc. 29-1, ¶ 21.) These allegations are sufficient to state a claim against Shelby County that survives a motion to dismiss. *Ancata*, 769 F.2d at 705. *See also Shaw v. Coosa County Com'n*, 330 F. Supp. 2d 1285, 1289 (M.D. Ala. 2004) ("Where, as here, it is alleged that a breach of the county's duty to provide adequate funding for medical treatment of and medicines for inmates of the county jail caused such an inmate to die, this Court cannot say that the motion to dismiss should be granted.") (internal citations omitted).

### 2. Counts II and III

Counts II and III allege that Shelby County deprived Ms. Allred of her due process and equal protection rights in violation of 42 U.S.C. § 1983, through automatic incarceration without a hearing to determine indigency, proximately resulting in "injuries" and "damages," respectively. (Doc. 4, ¶¶ 33, 36.)

In evaluating whether a local government such as a county is liable under § 1983,

the Eleventh Circuit has held that:

> [A] court must identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.
>
> Two principles guide our analysis of which governmental actors speak with final authority. First, we must focus our attention on the particular area or issue for which the government official is alleged to be the final policymaker. Second, our inquiry depends upon an analysis of Alabama law. We must determine the actual function of an official in a particular area by reference to the definition of the official's functions under relevant state law.

*Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1287 (11th Cir. 1998) (internal quotation marks and citations omitted).

Shelby County is not the final policymaking authority with respect to incarceration because Alabama counties have limited involvement with the jails and jail staff in their territory, mostly restricted to funding and physical maintenance. Alabama Code §§ 11-14-10 and 11-14-13 establish the duties a county has with respect to jails in their territory. These provisions pertain " exclusively to the physical plant of the jail." *Turquitt*, 137 F.3d at 1290. " The duty to 'maintain a jail' under § 11-14-10 is merely the duty to keep the 'jail and all equipment therein in a state of repair and to preserve it from failure or decline.' " *Id.* (quoting *Keeton v. Fayette County*, 558 So. 2d 884, 886 (Ala. 1989)). These code sections and the duties imposed " do not imply or

impart any control over the jails' operation." *Turquitt*, 137 F. 3d at 1290.

Rather, "an Alabama sheriff acts exclusively for the state rather than for the county in operating a county jail." *Turquitt*, 137 F.3d at 1288. Shelby County argues that it cannot be held liable for the acts of the Sheriff or his employees that are tortious. Indeed, "a sheriff is an executive officer of the State," and "not an employee of a county for the purposes of imposing liability on the county." *Ex parte Sumter County*, 953 So. 2d at 1239. The complaint contains no factual allegations demonstrating that Shelby County has any control over the operations of the jail, the Sheriff, or jail employees. Further, Plaintiff has offered no legal authority supporting her contention that Shelby County was responsible for incarcerating Ms. Allred or failing to provide a hearing to determine indigency. Accordingly, Plaintiff has failed to state a claim of a constitutional violation against Shelby County in Counts II and III.

3.    Count IV

While Count IV against Prison Healthcare is premised upon Alabama's wrongful death statute, Count IV against Shelby County is a wrongful death claim brought under federal law through the guise of § 1983. Plaintiff claims that Shelby County "instituted and maintained a policy or custom of denying inmates medical care," violating the Fourteenth Amendment and proximately resulting in the decedent's death. (Doc. 4, ¶ 39.)

As previously mentioned, Alabama law provides that " necessary medicines and medical attention to those who are sick or injured, when they are unable to provide them for themselves," must be furnished by the sheriff or jailer, at the expense of the county. *King*, 620 So. 2d at 625. This duty is non-deligable, and a " [l]ack of funds for facilities cannot justify an unconstitutional lack of competent medical care and treatment for inmates." *Ancata*, 769 F.2d at 705.

The Second Amended Complaint alleges a breach of Shelby County's duty to provide adequate funding for medical care within the jail. (Doc. 29-1, ¶ 21.) Further, Plaintiff alleges that this breach caused or contributed to the denial of medical treatment for Ms. Allred, which ultimately caused her death. (*Id.*, ¶ 23.) Pursuant to Eleventh Circuit law, these allegations are sufficient to survive a motion to dismiss because they could provide relief under a claim of wrongful death.

3.      Count V

Plaintiff alleges that Shelby County has duties to screen applicants, train and supervise the jailers, and terminate employees who could not understand the law or perform their jobs properly. (Doc. 4, ¶ 43.) Plaintiff alleges that the County breached this duty by failing to train or supervise the Prison Healthcare contractors and other employees in their duties to administer basic medical care to inmates, thus causing Ms. Allred's death. (*Id.* at ¶¶ 44-45.) However, Plaintiff fails to state a claim for relief since

counties only have the powers delegated to them by the state legislature, which does *not* include control over jail operations. *See Turquitt*, 137 F.3d at 1289. Counties in Alabama have no control over the sheriff, deputies, or jailers, as they are properly classified as state officers. *See Lancaster v. Monroe County*, 116 F. 3d 1419, 1430 (11th Cir. 1997) (under Alabama law, counties required to pay salaries, but are not given control over jailers, sheriffs, or deputies). *See also Gaines v. Choctaw County Commission*, 242 F. Supp. 2d 1153, 1159 (S.D. Ala. 2003). Further, a county's duty to provide funding for "necessary medicines and medical attention to those who are sick or injured, when they are unable to provide them for themselves," *King*, 620 So. 2d at 625, does not include a duty to train or supervise the Prison Healthcare contractors and other employees in administering basic medical care to inmates. *See Marsh*, 268 F.3d at 1026 ("[U]nder Alabama law the County is not responsible for assuring procedures are in place for inmates to get medical care."). For these reasons, Count V is due to be dismissed as to Shelby County.

G.    Sheriff Chris Curry's Motion to Dismiss

1.    Official Capacity

Several counts of Plaintiff's complaint are specifically pled against Sheriff Curry in both his official and individual capacities. Under Alabama law, as interpreted by the Eleventh Circuit, a claim against a sheriff in his official capacity is considered to be a

suit against the state and, as such, is precluded by the Eleventh Amendment. *See Lancaster v. Monroe County*, 116 F.3d 1419, 1429–30 (11th Cir. 1997) (dismissing § 1983 official capacity claims against an Alabama sheriff based on Eleventh Amendment immunity). As such, those Counts are due to be dismissed as to Sheriff Curry in his official capacity.

### 2.   Individual Capacity

In his motion to dismiss, Sheriff Curry argues that he is entitled to the defense of qualified immunity as to Counts I, II, and III in his individual capacity, and that Counts I, II, and III fail to meet the heightened pleading standard of *Iqbal* and *Twombly*. He further argues that he is entitled to the defense of absolute immunity as to Counts IV and V in his individual capacity.

### a.   Count I

Count I alleges deliberate indifference to the decedent's serious medical needs in violation of the Due Process Clause of the Fourteenth Amendment, and seeks a remedy pursuant to 42 U.S.C. §§ 1983 and 1988. Plaintiff bases her claim on two separate allegations:  (1) Sheriff Curry's drinking-cup policy, and (2) Sheriff Curry's failure to provide medicine and medical care to Ms. Allred.

Specifically, Plaintiff alleges that Sheriff Curry breached his duties to keep drinking water accessible at all times to each prisoner, and to provide necessary

medicines and medical attention to Ms. Allred, who was not provided any medication at all. (Doc. 29-1, ¶¶ 24–26.)[2] However, these duties arise under state law, and a breach thereof is a state law claim precluded by absolute immunity. Art. 1, § 14 of the Alabama Constitution. *See Sumter County*, 953 So.2d at 1239 (Ala. 2006). Despite this, the Due Process Clause of the Fourteenth Amendment does prohibit deliberate indifference to the serious medical needs of pretrial detainees. *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1396 (11th Cir. 1994) (minimum standard of medical care allowed under Fourteenth Amendment for pretrial detainees is the same as that allowed by Eighth Amendment for convicted persons); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (Eighth Amendment prohibits deliberate indifference to the serious medical needs of prisoners because it constitutes the unnecessary and unwanton infliction of pain).

Sheriff Curry argues that he is entitled to a defense of qualified immunity as to Count I. Qualified immunity shields governmental officers from " liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To support his

---

[2]Alabama sheriffs must "keep the jail supplied with wholesome water for drinking . . . [and] keep drinking water accessible at all times to each prisoner," Ala. Code § 11-14-21, as well as furnish "necessary medicines and medical attention to those who are sick or injured when they are unable to provide for themselves." Ala. Code § 14-6-19.

qualified immunity defense, Sheriff Curry " must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Mathews v. Crosby*, 480 F.3d 1265, 1269 (11th Cir. 2007). Since Plaintiff concedes in her brief that Sheriff Curry was acting within the scope of his discretionary authority when the alleged constitutional violation occurred (Doc. 30 at 9), the burden shifts to Plaintiff to demonstrate that qualified immunity is not appropriate by showing that the constitutional right was " clearly established" by preexisting federal law at the time of the action. *Mathews*, 480 F.3d at 1269 (citing *Saucier v. Katz*, 553 U.S. 194, 201 (2001)).

Determining whether Sheriff Curry is entitled to a qualified immunity defense involves a two prong analysis: " First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (internal citations omitted). The Supreme Court has provided that " judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555

U.S. 223, 236 (2009).

### i.      Drinking-Cup Policy

Rather than determine whether Plaintiff states a claim in Count I for a constitutional violation regarding Sheriff Curry's drinking-cup policy, the Court will exercise its discretion and determine whether the right at issue was clearly established at the time of Sheriff Curry's alleged misconduct assuming, *arguendo*, that his drinking-cup policy violates Plaintiff's constitutional rights.

" A government–officer defendant is entitled to qualified immunity unless, at the time of the incident, the 'preexisting law dictates, that is, truly compel[s],' the conclusion for all reasonable, similarly situated public officials that what Defendant was doing violated Plaintiffs' federal rights in the circumstances." *Marsh*, 268 F.3d at 1030–31 (citing *Lassiter v. Alabama A&M Univ.*, 28 F.3d 1146, 1150 (11th Cir. 1994)). " The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). While a case with identical facts is not necessary for the law to be clearly established, " the preexisting law must make it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue." *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010) (citation omitted).

In her brief Plaintiff fails to cite any preexisting law clearly establishing that a person in Sheriff Curry's position was violating Ms. Allred's constitutional rights by promulgating a policy prohibiting drinking vessels other than those purchased from the jail commissary. Furthermore, this Court finds no case law with identical facts to those at issue in this case that would clearly establish the constitutional right Plaintiff claims Sheriff Curry violated. Despite this, the Eleventh Circuit has held:

> [T]he existence of a factually similar case is not the only way to put officials on notice of the unlawfulness of their conduct. Indeed, "[a] government official can be put on notice that his actions will violate a constitutional or statutory right by . . . a legal principle announced by a decision from a court with jurisdiction over the place where the violation of rights was committed."

*Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1237 (11th Cir. 2010). In *Harper*, the court found that prior case law establishing the illegality of delayed or inadequate treatment for alcohol withdrawal should have put supervisors on notice that policies of delayed investigation into the treatment of alcohol withdrawal would be unlawful as well. *Id.*

Unlike the plaintiff in *Harper*, Plaintiff has not even presented case law establishing the illegality of prohibiting an inmate from possessing certain drinking vessels. Furthermore, this Court cannot find any law announcing such a legal principle. Without such case law, Sheriff Curry could not have been put on notice that his

drinking-cup policy would be unlawful. For this reason, Sheriff Curry is entitled to qualified immunity as to Count I regarding his drinking-cup policy.

> ii.    Failure to Provide Medicine and Medical Care

In accordance with the two prong qualified immunity analysis, Plaintiff must first make out a violation of the Fourteenth Amendment by alleging facts sufficient to show deliberate indifference.  This can be established by demonstrating that a prison official " (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence." *Harper*, 592 F.3d at 1234 (citations omitted). Although Plaintiff has alleged that the medical staff of the Shelby County Jail was made aware of the severity of Ms. Allred's illness by her son (Doc. 291-1, ¶ 11), and  the jailors were made aware of her serious medical condition by her fellow inmates and by virtue of her appearance (*id.*, ¶ 12), she does not allege any facts showing that Sheriff Curry had personal subjective knowledge of a risk of serious harm to Ms. Allred.

Normally, vicarious liability and respondeat superior claims cannot be alleged under § 1983. *See Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (recognizing that " [g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*" ). However, supervisory liability may be applied " 'when there is

a causal connection between actions of the supervising official and the alleged constitutional violation.'" *Gonzales v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (quoting *Braddy v. Florida Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998)). To establish a causal relationship, Plaintiff must show that either: (1) "a history of widespread abuse puts [Sheriff Curry] on notice of the need to correct the alleged deprivation, and he fails to do so," (2) "[Sheriff Curry's] custom or policy . . . result[s] in deliberate indifference to constitutional rights," or (3) "facts support an inference that [Sheriff Curry] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Harper*, 592 F.3d at 1236 (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360–61 (11th Cir. 2003)).

In her First Amended Complaint, Plaintiff alleges that Sheriff Curry "instituted and maintained a policy or custom of denying inmates medical care." (Doc. 4, ¶ 39.) However, this allegation is conclusory, and cannot support a theory of supervisor liability against Sheriff Curry. *See Doe v. School Bd. Of Broward County, Fla.*, 604 F.3d 1248, 1267 (11th Cir. 2010) (conclusory assertion of a custom or policy resulting in deliberate indifference not sufficient for supervisor liability). Moreover, Plaintiff alleges a single, isolated incident from which a custom or policy cannot be inferred. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985) (single, isolated incident not sufficient to infer a municipal policy or custom). Accordingly, the facts as alleged do

not make out a constitutional violation against Sheriff Curry regarding his policy of denying inmates medicine and medical care. The Court is not prepared to dismiss this Count, however, and will direct Plaintiff to either amend her complaint to allege more than conclusory statements, or abandon her claim of deliberate indifference against Sheriff Curry in his individual capacity.

### b.    Count II and III

Counts II and III allege that Sheriff Curry deprived Ms. Allred of her due process and equal protection rights in violation of 42 U.S.C. § 1983, through automatic incarceration without a hearing to determine indigency, proximately resulting in "injuries" and "damages," respectively. (Doc. 4, ¶¶ 33, 36.)

In reviewing the pleadings for a factual basis to support Plaintiff's § 1983 claims, the Court notes that a plaintiff is obligated to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. A complaint will be considered insufficiently pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff does not allege any specific facts linking Sheriff Curry to Ms. Allred's automatic incarceration without a hearing, either directly or through a theory of supervisor liability.  She does not allege that Sheriff Curry personally participated in Ms. Allred's incarceration and lack of a hearing. She does not allege a history of widespread abuse that put Sheriff Curry on notice of the need to correct such constitutional violations. She does not allege a custom or policy implemented by Sheriff Curry regarding automatic incarcerations without hearings. Finally, she does not allege any facts supporting an inference that Sheriff Curry directed his subordinates to incarcerate Ms. Allred without a hearing to determine indigency. Instead, she merely asserts that all Defendants violated Ms. Allred's rights by automatically imposing incarceration for failure to pay fines and costs without a hearing to determine indigency. Accordingly, Plaintiff has failed to state a claim of a constitutional violation against Sheriff Curry as to Counts II and III.

> c.    Count IV

Count IV of the Second Amended Complaint is a state law claim of wrongful death pled against Sheriff Curry via 42 U.S.C. § 1983, alleging constitutional violations that resulted in the decedent's death. Specifically, Plaintiff alleges that Sheriff Curry promulgated a policy of denying inmates medical care as guaranteed by the Fourteenth Amendment. (Doc. 4, ¶ 39.)

Sheriff Curry's only argument against this Count is that it is based entirely upon a state law claim, and he is entitled to absolute immunity. *See Lancaster*, 116 F.3d at 1430–31 (affirming summary judgment on state law wrongful death and negligence claims against sheriff and other executive officers of the state in their official capacities and individually based on absolute immunity). Under Alabama law, a state law claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity. *Id.* at 1430.

In Count IV, Plaintiff utilizes § 1988 and the Alabama wrongful death statute to create a § 1983 wrongful death claim, *see Estate of Gilliam*, 639 F.3d at 1047 ("when a constitutional violation actually causes the injured parties death, a § 1983 claim can be asserted through the Alabama wrongful death statute"), that survives Sheriff Curry's absolute immunity defense in his individual capacity. *See Martinez v. State of Cal.*, 444 U.S. 277, 284 n.8 (1980) (conduct by persons acting under color of state law which is wrongful under § 1983 cannot be immunized by state law). However, the only conduct Plaintiff alleges that Sheriff Curry committed that could contribute to Ms. Allred's wrongful death was instituting and maintaining "a policy or custom of denying inmates medical care." (Doc. 4, ¶ 39.) As previously explained, this allegation is conclusory, and the single incident involving Ms. Allred is not sufficient to infer a custom or policy of denying inmates medical care. *See supra* Part IV.G.2.a.ii.

Accordingly, the facts as alleged do not make out a constitutional violation against Sheriff Curry regarding Ms. Allred's wrongful death. The Court is not prepared to dismiss this Count, however, and will direct Plaintiff to either amend her complaint to allege more than conclusory statements, or abandon her claim of wrongful death against Sheriff Curry in his individual capacity. For this reason, Sheriff Curry's motion to dismiss will be denied as to Count IV.

d.     Count V

In Count V, Plaintiff alleges that Sheriff Curry breached his duties to screen applicants, train and supervise the jailers, and terminate employees who could not understand the law or perform their jobs properly. (Doc. 4, ¶ 43.)

It is difficult to discern from the First Amended Complaint whether Count V is a state law claim, or a federal claim.[3] If it is a state law claim, then Sheriff Curry's status as an executive officer of the State of Alabama provides him with absolute immunity to Plaintiff's negligence claim when "acting within the line and scope of [his] employment." *Sumter County*, 953 So. 2d at 1239 (quoting *Ex parte Purvis*, 689 So.2d 794, 795 (Ala.1996)); *see also* Art. 1, § 14, Ala. Const. of 1901. No allegations

---

[3]Plaintiff uses language in Count V indicating that she may have intended it to be a § 1983 claim. (Doc. 4, ¶ 45) (Jailers acted "under color of state law" and "deprived [Ms. Allred] of her constitutionally guaranteed rights.")

have been made to suggest that Sheriff Curry was acting outside of the scope of his duties as a sheriff.

Furthermore, if Count V is a federal claim, then Plaintiff would need to allege facts sufficient to demonstrate deliberate indifference, rather than mere negligence, in the hiring, training, supervision, or retention of Sheriff Curry's employees to hold him liable under § 1983. *Greason v. Kemp*, 891 F.2d 829, 836–37 (11th Cir. 1990). She has not done so. Accordingly, Count V fails to state a claim against Sheriff Curry in his individual capacity and is therefore due to be dismissed.

V.    Conclusion

For the above reasons, Plaintiff's Motion for Leave to Amend is due to be GRANTED. Defendants Harpersville and Theoangelo Perkins' Motion to Dismiss is due to be GRANTED in part. Theoangelo Perkins' request to dismiss all counts against him is due to be GRANTED. A ruling on Harpersville's request to dismiss all counts against it is due to be DEFERRED, and Plaintiff will be directed to provide a responsive submission to Harpersville's request. Defendant Prison Healthcare's combined Motion to Dismiss and Motion for More Definite Statement is due to be DENIED as to Counts I and IV, with leave to refile as to Count I. A ruling on Defendant JCS's Motion for Summary Judgment is due to be DEFERRED, and Plaintiff will be directed to provide a responsive submission to JCS's motion.

Defendant Sheriff Curry's Motion to Dismiss is due to be GRANTED in part and DENIED in part. Sheriff Curry's request to dismiss Counts I and IV are due to be DENIED with leave to refile, and his requests to dismiss Counts II, III, and V are due to be GRANTED. Defendant Shelby County's Motion to Dismiss is due to be GRANTED in part and DENIED in part. Shelby County's requests to dismiss Counts I and IV are due to be DENIED with leave to refile, and its requests to dismiss Counts II, III, and V are due to be GRANTED. Defendant Theoangelo Perkins is due to be DISMISSED as a defendant. A separate order will be entered.

Done this 21st day of May 2013.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

171032