FILED
2013 Oct-08  PM 12:16
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BRITTNE A. BELL, as Personal )
Representative of the Estate of )
Rebecca Lynn Allred, )
  )
   Plaintiff, )
  )
vs. )    2:12-CV-2991-LSC
  )
SHELBY COUNTY, ALABAMA, )
et al., )
  )
   Defendants. )

## MEMORANDUM OF OPINION

Before the Court is the Renewed Motion to Dismiss of Defendants Shelby County and Sheriff Chris Curry ("Curry"). Each of these Defendants move the Court to dismiss the claims asserted against them in Counts I and IV of Plaintiff's Third Amended Complaint. For the reasons discussed below, Curry's motion to dismiss is due to be granted, while Shelby County's motion will be granted in part and denied in part.

## I. Background

Brittne Bell ("Plaintiff") brings this suit as the personal representative of her mother, Rebecca Lynn Allred ("Allred"), alleging that constitutional violations by the

Defendants caused Allred's death. In Count I, Plaintiff asserts that Sheriff Curry and the Shelby County Jail were deliberately indifferent to Allred's medical needs. (Doc. 38 at 2.) Count IV alleges that this deliberate indifference caused Allred's death. (Doc. 38 at 4.)

A. Facts Pleaded by Plaintiff[1]

Allred was arrested on or about May 13, 2011, by Harpersville, a town with no city jail. (Doc 4 at 3.) She was transported to the Shelby County jail, where, unable to pay her bail, she was held as a pretrial detainee. (*Id.*) During her incarceration, Allred became ill and tried to get treatment from the jail nurse multiple times. (*Id.* at 4.) Allred was turned away by the medical staff each time without treatment. (*Id.*)

Symptoms of Allred's illness included a yellow tinge to her skin and the whites of her eyes, as well as cough, fever, vomiting, and fatigue. (Doc. 29-1 at 3-4.) Other inmates noticed Allred's illness and asked jail officials to assist her. (*Id.* at 4.) Failing in this endeavor, they pooled telephone privileges to call Allred's son, Dustin Allred, and inform him of his mother's condition. (Doc. 4 at 4.) Dustin Allred called the jail repeatedly on May 16, 2011. (*Id.*) After multiple unanswered calls, he reached a staff member who was dismissive of his concerns. (*Id.*)

---

[1] These facts are gleaned from Plaintiff's three complaints, with all statements therein accepted as true; no facts outside the pleadings are considered. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).

On the afternoon of May 17, 2011, Allred was found unresponsive in her cell and transported to the Shelby Baptist Medical Center Emergency Room. (*Id.*) At Shelby Baptist, she was diagnosed with hepatic encephalopathy, a brain disorder caused by liver damage. (Doc. 29-1 at 4). An autopsy determined that Allred died of liver failure and also revealed that she had acute bronchopneumonia at the time of her death. (Doc. 4 at 5.) Plaintiff alleges that "even rudimentary medical treatment" would have prevented Allred's death. (Doc. 4 at 5.)

During Allred's stay, the Shelby County Jail experienced plumbing problems. (Doc. 29-1 at 2.) The most serious of these was that the regulation of hot water occasionally failed, causing the water from the taps and fountains to be too hot to touch or drink. (*Id.*) In addition, the fountains often did not operate properly and water could only be gotten from them if the inmate possessed a vessel to catch it or cupped it in her hand. (*Id.*)

While Allred was at the jail, inmates were prohibited from possessing cups or other drinking vessels not purchased at the jail commissary. (Doc. 29-1 at 2.) Allred, being indigent, did not have the money to purchase a cup from the commissary. (*Id.* at 3.) She could occasionally drink from the fountains when they were operating properly, or cup her hands under the sink unless the water was too hot. (*Id.*) Without a cup, she could not return to her cell or bed with the water. (*Id.*)

Allred did receive liquids at meal times, but as her illness progressed, she was unable to leave her bed to go to meals. (Doc. 29-1 at 3.) According to Plaintiff, the combination of her untreated illness, the plumbing problems, and the lack of a cup contributed to dehydration, which in turn contributed to her liver failure and death. (*Id.*)

Since 2007, three other inmates have filed suit against Curry alleging a denial of medical treatment in the Shelby County Jail. (Doc. 38 at 2-3.) Two of these suits were filed prior to Allred's death, while the third was filed in April of 2013. (*Id.*) In addition, an inmate died in a local hospital in 2004, allegedly after receiving no treatment for a week following injuries that became infected with staph. (*Id.* at 2.)

B. Procedural History

Plaintiff filed her original complaint on September 17, 2012 (Doc. 1), and amended it on September 21, 2012. (Doc. 4.) Plaintiff originally sued the Town of Harpersville, Judicial Corrections Services, Prison Healthcare, LLC, and Theoangelo Perkins (the Mayor of Harpersville), as well as Shelby County and Sheriff Curry. The complaint alleges several claims under 42 U.S.C. § 1983, the Due Process Clause of the Fourteenth Amendment and Alabama state law.

The only claims before the Court in this opinion are Counts I and IV against

Curry and Shelby County.[2] Count I alleges deliberate indifference to the decedent's serious medical needs in violation of the Due Process Clause of the Fourteenth Amendment. (Doc. 4.) Count IV alleges that the constitutional violations asserted in Count I caused or contributed to Allred's death. (*Id.*) This Court previously addressed motions to dismiss these claims in its Memorandum of Opinion on May 21, 2013. (Doc. 36.) The Court denied Shelby County's motion to dismiss Counts I and IV, with leave to refile. (Doc. 37 at 2.) At the same time, the Court provided Plaintiff the opportunity to amend her complaint to attempt to state a claim against Curry on both of these counts. (*Id.*) Plaintiff has amended her complaint, and both Curry and Shelby County have renewed their motions to dismiss.

## II. Rule 12(b)(6) Standard

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. Fed. R. Civ. Proc. 12(b)(6). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman*, 225 F.3d at

---

[2] Defendants Harpersville and Theoangelo Perkins have been dismissed from this action with prejudice. Defendant Judicial Corrections Services has been dismissed without prejudice. Defendant Prison Healthcare LLC remains a party to the case and has no motion currently before the Court.

1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)). Furthermore, all "reasonable inferences" are to be drawn in favor of the plaintiff. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

Nonetheless, the plaintiff must plead "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[3] "Unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1036 n. 16 (11th Cir. 2001)). The Federal Rules of Civil Procedure require a pleading that states a claim to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). If the facts in the pleading "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief,'" and the complaint must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Eleventh Circuit has adopted "two-pronged approach" to motions to

---

[3] In *Twombly*, the U.S. Supreme Court abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" set forth in *Conley v. Gibson*, 355 U.S. 41 (1957). *Twombly*, 550 U.S. at 560-63. The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563.

dismiss suggested by the Supreme Court: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 664). In evaluating whether a claim is plausible, " courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* at 1295 (quoting *Iqbal*, 556 U.S. at 682).

Using this framework, the Court takes care not to "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. However, a plaintiff need not prove his case in the complaint; "the plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Chaparro v. Carnival Corp.* 693 F.3d 1333, 1338 (11th Cir. 2012) (quoting *Twombly*, 550 U.S. at 556). Further, a complaint should not be dismissed unless the allegations do not support any plausible theory of relief. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

In addition to moving to dismiss the claims against him, Sheriff Curry also

advances the affirmative defense of qualified immunity. (Doc. 43 at 22.) The Supreme Court has stressed that qualified immunity represents an immunity from suit rather than a defense to liability, and that it should therefore be addressed in the earliest possible stage of a case. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). When the Defendant is acting within his official discretion, qualified immunity serves to dismiss a claim at the 12(b)(6) stage if the Court concludes from the face of the complaint that the law supporting the claim was not clearly established before the defendant acted. *Marsh*, 268 F.3d at 1023. In addressing a motion to dismiss, the Court may first determine whether a constitutional right has been violated, and then whether that right had been clearly established, or it may skip directly to the "clearly established" prong. *Pearson v. Callahan*, 555 U.S. 223, 235-236 (2009).

III. Discussion

    A. Claims Against Shelby County

    Plaintiff claims that Shelby County acted with deliberate indifference by failing to fund medical care for prisoners in the jail and failing to provide funds to properly maintain the jail. This claim asserts a violation of the Due Process Clause and seeks to hold the County liable under 42 U.S.C. § 1983. The Court previously found that Plaintiff stated a claim against Shelby County in Count I (Doc. 36 at 14), but it permitted the County to refile the motion and now reconsiders its previous ruling.

Shelby County has a duty under Alabama law to provide funds for both the medical care and upkeep of the jail. Ala. Code § 14-6-9 (1975). At the federal level, the Due Process Clause (for pretrial detainees) and the Eighth Amendment of the federal constitution obligates local governments to provide medical care to incarcerated persons. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). A county is not absolved of this duty solely by contracting with a private medical provider. *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 705 (11th Cir. 1985). However, in suits brought under § 1983, local governments may not be held liable for the constitutional violations of individuals who work for them under a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 692-94 (1978); *see also McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 789 (1997) ("Alabama counties are not liable under a theory of *respondeat superior* for a sheriff's official acts").

Counties in Alabama do not participate in the day to day governance of the jail or the creation of its policies; they merely provides the funding. *Marsh*, 268 F.3d at 1027. Nonetheless, a county may be liable if its failure to provide funding "constituted deliberate indifference to a substantial risk of serious harm to the prisoners." *Id.* In this case, therefore, Shelby County could be liable for its own actions in providing (or failing to provide) the funding for the jail. Plaintiff must therefore plead facts that allow the court to plausibly infer that the County government acted with deliberate

indifference regarding this funding.

In her pleadings, Plaintiff alleges two potential factual bases for a finding of deliberate indifference on the part of Shelby County. First, she alleges the County failed to provide funding for the medical treatment of prisoners. (Doc. 29-1 at 6.) Secondly, Plaintiff alleges Shelby County failed to provide funding for the maintenance of the jail, including its plumbing system. (*Id.*) The factual support for these two claims varies greatly in Plaintiff's pleadings, and the Court will thus address them separately.

The first claim, regarding funding for the medical treatment of prisoners, is due to be dismissed. In *Ancata*, the Eleventh Circuit held that counties had a non-delegable duty to provide for indigent prisoners' medical treatment. 769 F.2d at 705. Thus, if Shelby County had taken any action that contributed to the violation of Allred's constitutional right to treatment, it could not hide behind an outside contractor to avoid liability for it. However, this does not absolve Plaintiff of her duty to plead facts that plausibly allege that the County actually did something to contribute to the violation. *See Iqbal*, 556 U.S. at 678-79.

Here, Plaintiff alleges only that "the lack of funding for appropriate medical care for inmates, caused or contributed to the utter denial of treatment to Allred, as a cost saving mechanism." (Doc. 29-1 at 6.) This conclusory statement cannot suffice

to survive a motion to dismiss, especially when Plaintiff has not even pleaded any facts that support a conclusion that a lack of funding existed in the first place. Plaintiff presents no facts, or even allegations, concerning the jail's budget, or any decision by the County to cut or limit that budget by limiting prisoner healthcare. Plaintiff provides no factual basis to infer that the jail nurse who turned Allred away without treatment did so because of a lack of funding. She does not allege that jail officials failed to notice Allred's illness because the jail was understaffed or because of security problems that could be tied to a funding failure. *See Marsh*, 268 F.3d at 1027-28. Likewise, Plaintiff presents no facts alleging that any of the other incidents mentioned in her Third Amended Complaint were caused by a lack of funding. (Doc. 38 at 2-3.)

Even in *Ancata*, which was decided prior to the Supreme Court's abrogation of the "any set of facts" standard, the Plaintiff provided considerably more substance from which to infer a lack of funds from the county. 769 F.2d at 705-06. In that case, the prisoner was twice denied treatment until a court order was obtained, so the court could legitimately infer at least the possibility of a county policy requiring such an order. *Id.* Here we have only the fact that the decedent received no treatment.

The Court is permitted to infer "obvious alternative explanation[s]" that reflect lawful conduct instead of the violations Plaintiff claims. *Twombly*, 550 U.S. at 567-68. The facts here make it at least as likely that Shelby County properly funded a

contract that should have served the prisoners' needs, and that the denial of treatment stemmed from either the mistakes or the deliberate indifference of entities other than Shelby County. The County cannot be held liable under § 1983 for any actions not its own. *See Grech v. Clayton Cnty., Ga.*, 335 F. 3d 1326, 1329-32. Therefore, Plaintiff has not stated a claim against Shelby County for failure to fund medical treatment, and this claim must be dismissed.

It does not follow, however, that the same result must be reached regarding Plaintiff's allegations that Shelby County failed to properly fund the maintenance of the jail. Plaintiff provides considerably more factual support for this claim. She claims that the plumbing system was not maintained in proper order. More specifically she alleges that drinking fountains were inoperable and that the hot water regulation failed at multiple times during Allred's incarceration. Because this regulation failed, the water was sometimes too hot to cup in one's hands or drink. Deterioration in the physical upkeep of the jail can serve as the basis of a complaint that prisoners' constitutional rights have been violated. *Marsh*, 268 F.3d at 1027-28. While the maintenance problems alleged in the present case may not be as severe as those in *Marsh*, the Court is not prepared to dismiss this claim.

Plaintiff further alleges that the plumbing problems in the jail contributed to Allred's injuries by leading to dehydration, which is one cause of hepatic

Page 12 of 22

encephalopathy. Dehydration could also have contributed to the severity of Allred's bronchopneumonia. The Court may thus plausibly infer that Shelby County's failure to maintain the jail was one cause of Plaintiff's injuries. At the least, these facts form a framework that makes it reasonably likely that discovery will reveal further evidence. *See Chaparro*, 693 F.3d at 1338. Therefore, Plaintiff's claim against Shelby County set out in Count I for failure to maintain the plumbing system in the jail survives this motion to dismiss.

In Count IV, Plaintiff brings a wrongful death claim, alleging that the constitutional violations in Count I caused Allred's death. (Doc 4 at 8.) This claim depends on the existence of a well-pleaded constitutional violation in the first place. Since the Court is dismissing Count I with respect to funding medical treatment, Plaintiff's wrongful death claim regarding that allegation also fails. Since the Court finds that Plaintiff did state a claim in Count I with respect to the County's failure to fund the maintenance of the jail, this can support a wrongful death claim as long as Plaintiff provided sufficient facts to plausibly allege that the poor maintenance contributed to Allred's death.

Plaintiff alleges that the hospital emergency room diagnosed Allred with hepatic encephalopathy, a prominent cause of which is dehydration. (Doc. 29-1 at 4.) In addition, Plaintiff alleges that Allred's autopsy revealed acute pneumonia as one cause

of her death, and that her inability to remain hydrated contributed to the progress of her pneumonia. (Doc4 at 5; Doc. 29-1 at 7.) Therefore, Plaintiff has alleged enough facts for the Court to plausibly infer that the constitutional violation contributed to Allred's death, thus this claim will not be dismissed.

B. Claims Against Sheriff Curry[4]

Plaintiff's Count I deliberate indifference claims against Curry may also be divided into two categories. First, Plaintiff alleges that Curry breached a duty to ensure that medical treatment is provided to inmates who need it. (Doc. 29-1 at 5-6.) Second, she alleges that Curry devised a policy that prohibited inmates from possessing cups or other drinking vessels that were not purchased from the jail commissary. (*Id.* at 2.) According to Plaintiff, this policy prevented Allred from obtaining enough water and contributed to her death. (Id. at 6-7.)

Like Shelby County, Curry cannot be held liable under a theory of *respondeat superior* for constitutional violations committed by people who work for him. *See Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). Therefore, in order to plausibly allege deliberate indifference in denying treatment to Allred, Plaintiff must show that

---

[4] These claims are asserted against Sheriff Curry in his individual capacity only, as the Court previously dismissed all claims against the Sheriff in his official capacity. (Doc. 36 at 18-19.) *See also Lancaster v. Monroe County*, 116 F.3d 1419, 1429-30 (11th Cir. 1997) (dismissing § 1983 claims against an Alabama sheriff in his official capacity based on Eleventh Amendment immunity).

Curry " 1)had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence." *Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1234 (11th Cir. 2010). In short, Plaintiff, like the plaintiff in *Harper*, must show that Curry had actual knowledge of the decedent's condition. *Id.* at 1234-35.

Plaintiff alleges that" the severity of Allred's illness was readily apparent to laypersons inside the jail," and that officials who came in contact with her would have immediately realized her condition. (Doc. 29-1 at 3.) Allred presented herself to medical staff on at least three occasions. (Doc. 4 at 4.) In addition, she alleges that fellow inmates told jail officials that Allred was ill, and that, as her illness progressed, she remained in bed during mealtimes, where her absence would have been noticed. (Doc. 29-1 at 3.) Furthermore, Plaintiff alleges that Allred's son called the jail multiple times and eventually spoke to a jail employee, informing that employee that Allred was ill. (Doc. 4 at 4.) However, the Plaintiff includes nothing in her pleadings that directly alleges that Curry had actual knowledge of Allred's condition.

Plaintiff argues that one could plausibly infer the Sheriff's knowledge from the length of time that Allred remained in the jail, the severity of her condition, and the number of jail officials who were told of her need for medical attention. The Eleventh Circuit, however, has come to the opposite conclusion in a case with similar facts. *Harper*, 592 F.3d at 1234-35. In Harper, the inmate died of symptoms from alcohol

withdrawal after being in the jail for four days. *Id.* at 1230. Several named jailers either observed behavior revealing distress and the need for treatment, or were informed of it by other officials and inmates. *Id.* In addition, the inmate in *Harper* had visited the jail at issue on numerous alcohol offenses and had previously discussed withdrawal-related seizures with jail officials. *Id.* at 1234. Regardless, Harper's complaint did not survive a motion to dismiss by the Sheriff and other officials who were not directly informed of the inmate's condition, as alleged by the pleadings. *Id.* at 1234-35. In the case at bar, just as in *Harper*, the Court cannot infer that Curry knew of Allred's condition from facts alleging what other jail officials knew.

Though personal knowledge is absent, Plaintiff may still make out a deliberate indifference claim by demonstrating a causal connection between Curry's actions and the alleged constitutional deprivation. *Gonzalez v. Reno*, 325 F.3d 1228 (11th Cir. 2003). This can be done by demonstrating a specific policy or direction from Curry that led to the deprivation of constitutional rights. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). Here Plaintiff points to no policy or other statement from Curry that could have resulted in jail officials' deliberate indifference.

The final method by which Plaintiff may support this claim is by demonstrating a "history of widespread abuse" that would put Curry on notice of the need to correct the deprivation. *Id.* Plaintiff points to three incidents that occurred at the jail before

Allred's incarceration that could have put Curry on notice.[5] (Doc. 38 at 2-3.) The most serious of these, resulting in the death of an inmate, happened in 2004, approximately seven years before Allred's death. (*Id.* at 2.) The second incident happened at some point before July 30, 2007, when an inmate filed suit against Curry alleging the denial of adequate treatment. (*Id.*) Another suit was then filed in January of 2011 alleging denial of medication and inadequate care. (*Id.* at 3.) Plaintiff does not allege any facts concerning the outcome of these lawsuits or whether Sheriff Curry or anyone at the jail was found to have violated a prisoner's constitutional rights.

"To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice." *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986) (noting that "random acts or isolated incidents are insufficient to establish a custom or policy"). A plaintiff must also allege that the defendant knew of the previous incidents. *Id.* Here, Plaintiff alleges that Curry was personally sued on at least two occasions, so the Court may plausibly infer that he had knowledge of these incidents. (Doc. 38 at 2-3.) The question thus becomes whether three incidents, two of which it can be stated with some certainty that Curry knew had happened, over a period of roughly seven years, can constitute a "consistent and wide-spread practice."

---

[5] Plaintiff also includes information about a fourth incident, another lawsuit filed by an inmate. This suit, however, occurred in April of 2013 and cannot be used by Plaintiff to put Curry on notice in 2011. (Doc. 38 at 3.)

*Depew*, 787 F.2d at 1499.

In *Clark v. Evans*, the Eleventh Circuit stated that " it is clear that four cases in four years would have been insufficient to put [a supervisory official] on notice . . . ." 840 F.2d 876, 885 (11th Cir. 1988). In *Clark*, there was some question about whether the official knew of the four incidents. *Id. Hawk v. Klaetsch* reinforces Clark's conclusion, absent the concern over the official's knowledge. —Fed. Appx.—, 2013 WL 3214906 at *1-*2 (11th Cir., Jun. 27, 2013). The plaintiff in *Hawk* sought to impose liability on a city and its police chief for the unconstitutional use of excessive force by an officer. *Id.* at *1. He claimed that five incidents established a history of widespread abuse, but two of these incidents did not involve the use of excessive force and could not put the police chief on notice to that problem. *Id.* at *1-*2 (" We fail to see how three incidents over the span of nearly five years can constitute frequent, widespread, or rampant abuse." ) *See also Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1266-67 (finding that two incidents of sexual harassment did not constitute a history of widespread abuse).

Although both *Hawk* and *Doe* affirmed summary judgments, *Clark* affirmed the District Court's dismissal at the 12(b)(6) stage. 840 F.2d at 885. Applying the logic of these cases, this Court cannot plausibly infer a " *consistent* and *widespread* practice" of denying medical treatment from three isolated incidents. *Depew*, 787 F. 2d at 1499

(emphasis added). This is especially true when the plaintiff has not alleged that any of these incidents were found to actually constitute violations of a prisoner's constitutional rights. If there were widespread problems regarding the provision of medical treatment to inmates at the Shelby County jail, it is indeed tragic that these problems were not corrected prior to the death of Plaintiff's mother. The fact remains, however, that Plaintiff has not plausibly alleged that such problems existed in a way that put Sheriff Curry on notice to correct them. Therefore, this Court must conclude that Plaintiff has not stated a claim against Sheriff Curry with respect to the denial of medical treatment.

Plaintiff also alleges that Sheriff Curry's policy prohibiting inmates from possessing cups (unless purchased in the commissary) contributed to Allred's dehydration and death. This Court previously found that, assuming *arguendo* a claim has been plausibly stated for a constitutional violation, the Sheriff is entitled to qualified immunity because such a violation has not been clearly established by preexisting law.[6] (Doc. 36 at 22, citing, inter alia, *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010). The Court continues to note the absence of case law establishing a constitutional right of prisoners to possess a cup. In the absence of a materially similar

_____

[6] As the Court noted in its previous opinion, Plaintiff concedes that Sheriff Curry was acting within the scope of his discretionary authority when the alleged constitutional violation occurred. (Doc. 36 at 21; Doc. 30 at 9.)

case, Plaintiff can show that a right is clearly established by pointing to a broader, clearly established principle that controls the case or by showing that the official's conduct is so egregious that a reasonable person would know it violated the constitution without caselaw on point. *Morton v. Kirkwood*, 707 F.3d 1276, 1282 (11th Cir. 2013). Plaintiff points to no such principle, and the Court does not believe that a rule about which cups may be had by the prisoners would arouse the constitutional hackles of even the most conscientious Sheriff.

However, the Court will assume for the sake of argument that, by alleging that the water is sometimes too hot to catch by hand, Plaintiff has plausibly alleged that, because she could not possess a cup, Allred was denied access to drinkable water in her cell between mealtimes. Even with this expansive reading, the Court cannot find law which establishes a prisoner's right to constant access to water.[7] The U.S. Supreme Court has found that the intentional deprivation of water, in circumstances including being out in the sun handcuffed to a post, can constitute a clearly established constitutional violation. *Hope v. Pelzer*, 536 U.S. 730 (2002). Even in the context of

_____

[7] It is true that Alabama State Law imposes a duty on Curry to "keep drinking water accessible at all times to each prisoner." Ala. Code § 11-14-21.  However, any state law claim against Curry for violating this duty is barred by absolute immunity. *Ex parte Sumter Cnty.*, 953 So. 2d 1235, 1239-1240 (Ala. 2006) (citing Ala. Const. 1901, Art. V. § 112). The breach of this state law duty could give rise to a federal claim only where such breach constituted a clearly established violation of the federal constitution. *Youmans*, 623 F.3d at 563.

working outside, however, a denial of water can sometimes be justified. *See Ort v. White*, 813 F.3d 318, 325 (11th Cir. 1987) (affirming dismissal where inmate was denied water after refusing to work or help carry the water keg).

In addition to *Ort*, a more recent case suggests that the Eleventh Circuit does not recognize an absolute right of prisoners to have water available at all times. *Collins v. Homestead Correctional Inst.*, 452 Fed. Appx. 848, 851 (11th Cir. 2011). In *Collins*, the prison officials apparently underestimated the water supply needed during a hurricane, and the appellate court affirmed summary judgment in their favor. *Id.* The Sixth Circuit came to a more direct conclusion, affirming dismissal of a case in which the prisoner argued that turning the water off in his cell constituted a constitutional violation. *Davis v. Miron*, 502 Fed. Appx. 569 (6th Cir. 2012).

It is unclear from Plaintiff's complaint how often or for how long the water would run too hot to touch or drink. Nonetheless, Plaintiff acknowledges that liquids were always available to prisoners at mealtimes and that water fountains and sinks were operable at least some of the time. Even if the Court assumes that denial of constant access to drinkable water violates a constitutional right, it cannot find that such a right was clearly established at the time of the violation. Therefore, Sheriff Curry is entitled to qualified immunity and Plaintiff's claim must be dismissed.

Plaintiff's Count IV alleges that Curry's constitutional violations wrongfully

caused Allred's death. Because the Court has found that Curry is not liable for any constitutional violation, no claim is stated in Count IV. Therefore, it is due to be dismissed.

IV. Conclusion

Plaintiff states a claim against Shelby County regarding the maintenance funding of the jail. No claim is stated against Shelby County with respect to funding for inmate treatment. Plaintiff does not state a claim against Sheriff Curry for failure to provide medical treatment. Sheriff Curry is entitled to qualified immunity on Plaintiff's claim concerning the drinking vessel policy. Therefore no claims survive against Curry. Plaintiff's maintenance funding claim against Shelby County, as well as her outstanding claims not addressed in this opinion, remain before the Court. An order reflecting this opinion will be entered.

Done this 8th day of October 2013.

L. SCOTT COOGLER

UNITED STATES DISTRICT JUDGE

174310