

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BRITTNE A BELL, as Personal Representative of the Estate of Rebeca Lynn Allred, | ) ) ) ) | |
| Plaintiff; | ) ) | 2:12-cv-02991-LSC |
| vs. | ) ) ) | |
| PRISON HEALTHCARE LLC, | ) ) | |
| Defendant. | | |

## MEMORANDUM OF OPINION

Before the Court is the motion for summary judgment filed by Defendant Prison Healthcare, LLC. (Doc. 69.) Also pending is a motion to strike filed by that Defendant. (Doc. 72.) For the reasons stated below, the motion for summary judgment is due to be denied and the motion to strike is due to be denied as moot.

I.    Background

Brittne Bell ("Bell"), the daughter of decedent Rebeca Allred ("Allred"), brings this suit alleging that Defendant Prison Healthcare, LLC's ("PHC") unconstitutional deliberate indifference caused her mother's death. Shelby County contracted with PHC to provide medical services to the Shelby County Jail, where

Allred was incarcerated shortly before her death.

On May 13, 2011, Allred was arrested for failure to pay a tag fine and placed in the Shelby County Jail. During intake, an inmate medical screening was conducted by a correctional officer, and a nurse recorded the medications on Allred's person at the time of her arrest.

By the morning of May 15, 2011, Allred was sick enough that it concerned her fellow inmates who asked Christy Feenker ("Feenker"), a fellow inmate who was a nurse, to check on her because she had spent much of the previous night suffering from vomiting and diarrhea. Feenker checked on Allred and saw that she was disoriented, had a high temperature, and seemed dehydrated. Feenker pushed the call button to notify the staff about Allred's condition. Despite informing the staff, no medical personnel came to the pod until the evening "pill call," where medications were administered to inmates. At pill call Feenker spoke to nurse Harvey Willard ("Willard"), and informed him of her concerns. Willard left the pod and returned later with a temperature strip to take Allred's temperature. Feenker explained that it was difficult to get Allred standing up in her condition, but Willard ordered them to do so.

Willard took Allred's temperature with the strip and found that Allred had a fever. Willard therefore moved Allred to the medical unit, where he charted at 9:45 P.M. that Allred had a temperature of 100.4 and complained of an earache. (Doc. 70-4

at 1.) He noted that Allred stated that she was bitten by a tick a few days before, and had a small puncture wound on the back of her neck without any redness, swelling, or rash. (*Id.*) Willard moved Allred to Room 113 for observation. Willard checked on Allred again approximately two hours later, at which time Allred was asleep.

On the morning of May 16, 2011, Willard checked on Allred again. He charted that she now had a temperature of 99.6, and indicated that she was not feeling well but made no specific complaints. (*Id.*) Allred was offered breakfast and fluids but refused them. At approximately 7:30 A.M. that day, Nurse Richard Robinson ("Robinson") checked on her. Allred's temperature was 98.2 at that time, and Robinson had her transferred back to general population as she no longer had a fever. According to a late entry made in the nurse's notes after Allred's death, that evening Allred was found lying under the telephone in her pod. An inmate helped Allred stand up and return to her bed, while another inmate informed the nurse that Allred was not feeling well, and took a sick call slip for her to fill out.

Before lunch on May 17, 2011, Allred's roommates again sought out Feenker to check on Allred. Feenker did so and found her unresponsive, and summoned a guard. Feenker informed the guard of Allred's condition and asked him to get a nurse, which the guard left to do. While waiting for the guard to return with medical help, Feenker called her husband and urged him to call 911 or the sheriff and ask them to send

emergency help for Allred, and then called Dustin Allred to warn him of his mother's condition.

At approximately 12:50 P.M., Nurse Robinson was called by the guards to Allred's pod to check on her. He found her lying in bed and unresponsive. Robinson and several correctional officers created a make-shift gurney from bedsheets and moved Allred to a wheelchair, which they used to transport her to the medical unit. Upon examination in the medical unit, Robinson noted Allred's vitals and placed her in a room for observation.  While under observation, Allred did not undergo any diagnostic tests nor was she treated with any medicine. According to Nurse Diana Shirley ("Shirley"), who also served as health administrator at Shelby County Jail, this was because medication can sometimes mask symptoms, so the medical staff wanted to observe Allred before providing her with any additional medical treatment.

While under observation, Allred began to rock back and forth in bed and foam at the mouth. Robinson and Shirley attempted to administer intravenous fluids, but were both unsuccessful in making five attempts at five different locations on her body. During this time, Shirley called Dustin Allred in response to multiple calls he had made to the jail concerning his mother. Shirley charted that during the call, she informed Dustin Allred about his mother's condition, and was informed that his mother was a "known IV drug abuser." (Doc. 70-4 at 2.)

Shirley then called to have Allred taken by ambulance to Shelby Baptist Medical Center. She also telephoned the Shelby Baptist Emergency Room to advise them of Allred's condition, and during that telephone call described Allred as "the boy who cried wolf," possibly because she had confused her with another inmate or former inmate who frequently claimed to be sick. Allred was pronounced dead at Shelby Baptist the following morning. Her autopsy listed a final diagnosis of "acute massive hepatocellular necrosis" and "acute broncopneumonia," with the cause of death listed as "liver failure." (Doc. 70-14 at 2.)

Bell filed her complaint against PHC and several other Defendants on September 17, 2012. Over the course of litigation, all the Defendants save PHC were dismissed. The only remaining claim is against PHC for violation of the due process clause of the Fourteenth Amendment under 42 U.S.C. § 1983. On March 13, 2015, PHC filed a motion for summary judgment on the claims asserted against it.

II.    Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a "genuine dispute" as to a material fact "if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The trial judge should not weigh the evidence but must simply determine where there are any genuine issues that should be resolved at trial. *Id.* at 249.

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by " considering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party." *McGee v. Sentinel Offender Services, LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (citing *Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005)). In making a motion for summary judgment, " the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *Id.* Although the trial courts must use caution when granting motions for summary judgment, " [s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555 (1986).

III.   Discussion

A.     § 1983 - Deliberate Indifference

The United States Supreme Court has held that only *deliberate* indifference to serious medical needs is actionable as a constitutional violation under 42 U.S.C. § 1983. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976). To recover for deliberate

indifference under § 1983, a plaintiff must establish (1) a serious medical condition that poses a substantial risk of harm if left unattended; and (2) prison officials' deliberate indifference to that condition. *See Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2001). The parties do not dispute that Allred suffered from a serious medical condition, and therefore the only question for the Court is whether PHC was deliberately indifferent to that condition.

To make a showing of deliberate indifference, " a prisoner must show the prison official's: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence.' " *Id.* (quoting *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000)). The subjective knowledge requirement of this claim requires that the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Therefore, " an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838. " When the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989) (citing *Ancata v. Prison Hlth. Servs, Inc.*, 769 F.2d 700, 704 (11th Cir. 1985)). However, an

inadvertent failure to provide adequate care, or a negligent diagnosis or treatment does not state a valid claim for deliberate indifference, and " [m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 105-06.

It is clear in this case that Allred's condition became significantly worse over the time that she spent in the Shelby County Jail. While it is unclear whether the PHC staff had the required subjective knowledge of the seriousness of Allred's condition before Robinson and the guards transported her to the medical unit on May 17, it is clear that they became aware of it at that time. When informed by the jail guards that Allred was ill and needed attention around noon on May 17, Robinson went to Allred's cell and found her unresponsive and jaundiced. In response, Robinson and several guards carried her to a wheelchair, in which they took her to the medical unit. In the medical unit Allred's vitals were taken, and Allred was then placed under observation and watched continuously by the medical staff. When Allred began to breathe rapidly, rock back and forth, and foam at the mouth, the medical staff called for an ambulance to take her to the hospital and made multiple unsuccessful attempts to administer intravenous fluids.

While mere negligence or even malpractice does not rise to the level of deliberate indifference, in this case the medical staff took an unresponsive, jaundiced

inmate and placed her in the medical unit for over an hour with no treatment other than taking her vitals. It was only when Allred began to breathe rapidly and foam at the mouth that the medical staff called for an ambulance and attempted to initiate intravenous fluids. A reasonable jury could determine that the need to treat an unresponsive, jaundiced woman was obvious, and that the treatment provided was "so cursory as to amount to no treatment at all." *Mandel*, 888 F.2d at 789.

PHC has also argued that summary judgment is proper because the care or lack of care rendered by the medical staff was not the proximate cause of Allred's death. In support, they point to expert testimony stating that the only treatment for liver failure of that severity was a liver transplant, which Allred would not have been eligible for as a result of her alleged drug use. However, Dr. Reddix testified in his deposition that, with proper treatment and maintenance medicine, inmates with "this kind of problem" have survived in a prison setting. (Doc. 70-13 at 19.) In other words, with proper treatment, she would not have died then, even if ultimately she would have succumbed to liver failure. Because a reasonable jury could find that PHC was deliberately indifferent, and the lack of care was the proximate cause of Allred's immediate death, PHC's motion for summary judgment is due to be denied.

B.    Motion to Strike

PHC has moved to strike certain evidence submitted by Bell in her opposition

to their motion for summary judgment, including the statements of Allred's fellow inmates, because those statements were inadmissible hearsay. To the extent that the inmates testimony concerned their own observations, and did not concern statements made by others, the motion to strike is due to be denied as that testimony is not hearsay.

PHC has also moved the strike the expert testimony of Dr. Reddix, Bell's expert witness, on the ground's that his deposition testimony contradicts itself. Whether or not a deponent contradicts his testimony is irrelevant for the purposes of admissibility. The case cited by PHC, *Van T. Junkins & Assoc., Inc. v. U.S. Ind., Inc.*, 736 F.2d 656 (11th Cir. 1984), does not change that conclusion. The Eleventh Circuit in that case disallowed the admission of "sham affidavits," submitted after the fact to contradict testimony in a deposition; it did not concern conflicting testimony within a single deposition. Therefore, the motion to strike is due to be denied as to Dr. Reddix's testimony. As it was not necessary for the Court to consider any of the other testimony at issue in the motion to strike in reaching the conclusion that summary judgment is not appropriate, the remaining portions of the motion are due to be denied as moot.

IV.   Conclusion

For the foregoing reasons, PHC's motion for summary judgment (Doc. 69) is due to be DENIED. PHC's motion to strike (Doc. 72) is also due to be DENIED.

A separate order will be entered.

Done this 10th day of July 2015.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

177825